UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICHARD JAMES WELK, | ) | Civil No. 12-2943-IEG(WVG) |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | ) | |
| MATTHEW CATE, Secretary | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

I.  INTRODUCTION

Petitioner Richard James Welk (hereafter "Petitioner"), a state prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (hereafter "Petition") challenging his conviction for one count of first-degree murder of David Fortner (hereafter "Fortner"). (Respondent's Lodgment No. 4 at 1554.) Petitioner contends that habeas relief is proper based on one ground. (Petition at 9-19.) He asserts that his due process rights were violated based on insufficient evidence to support his conviction for violation of Cal. Pen. Code § 187 (a). (Petition at 9.) Respondent Matthew Cate ("Respondent") has filed an Answer to

the Petition. Petitioner has filed a Traverse to Respondent's Answer.

The Court has reviewed the Petition, Respondent's Answer, the Traverse, and all supporting documents submitted by the parties. Based on the documents and evidence presented, and for the reasons set forth below, the Court finds that Petitioner is not entitled to the relief requested and RECOMMENDS that the Petition be DENIED.

## II. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct. See 28 U.S.C. § 2254(e)(1); see also Parke v. Raley, 506 U.S. 20, 30-36 (1992) (findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness). This statement of facts is substantially taken from the unpublished opinion of the California Court of Appeal and filed as Respondent's Lodgment No. 9.

> Early in the evening on April 28, 2007, [Petitioner] and his friend, Wayne Brown, went to Mission Beach in San Diego where they met up with friends. While at the beach, [Petitioner] had an altercation with Fortner, who appeared to be homeless. During the altercation, [Petitioner] stabbed Fortner in the neck with a knife and killed him. Multiple witnesses, including Brown, testified to describe events relevant to the stabbing incident.
>
> On the evening of the incident, Ruben Frausto was at the beach and noticed Fortner, who was wearing headphones and singing, sitting on the seawall. Frausto saw [Petitioner] approach Fortner and taunt him. Fortner told [Petitioner] to stop, but when [Petitioner] continued the taunting, Fortner swung at him to get him to move away. Fortner was unsteady on his feet, appeared to be intoxicated, and never actually struck [Petitioner]. At some point, Frausto saw [Petitioner] holding a knife behind his leg and heard him say to Fortner, "I'm going to get you in self-defense." [Petitioner] swung the knife in an upward "roundhouse" motion and hit Fortner in the left side of his neck. When [Petitioner] pulled his hand away, Fortner fell to the ground and did not move again. [Petitioner] walked

>   away and said "I told ya I'd get you. Self-defense. Self-defense. Everybody saw that. Self-defense."
>
>   Oscar Kebriti was at the beach with his wife when he saw [Petitioner] approach Fortner. Kebriti observed Fortner trying to punch [Petitioner] and saw the two men fighting, but thought they were playing. At one point, Kebriti saw [Petitioner] pull a knife out of his pocket, flip it open and stab Fortner in the neck. As Fortner fell to the ground, [Petitioner] folded the knife and returned it to his pocket. [Petitioner] then said something to a group of people and left on his bike.
>
>   Elsie Machuca also witnessed the stabbing incident. Machuca never saw Fortner strike or advance toward [Petitioner]. Rather, Fortner was moving away from [Petitioner] and had his hands up to block [Petitioner]'s blows. Machuca saw [Petitioner] strike Fortner and then pull back with a knife in his hand. [Petitioner] folded the knife, put it in his shorts, and walked over to a group of people sitting along the seawall. [Petitioner] then gave someone a "high five" and left on his bike.
>
>   Anthony Atwood was at the beach with his friend, Omar Cantu, when he noticed [Petitioner] and Fortner yelling at each other. Fortner was trying to disengage by putting his hands up and backing away. [Petitioner] punched Fortner in the face, causing him to fall into the sand. As Fortner tried to get up, [Petitioner] pulled out a knife, flipped it open, and held it by his side. Before Fortner could fully stand up, [Petitioner] cupped Fortner's head in his left hand and, with a quick forceful blow, stabbed him in the neck with the other hand. Fortner fell to the ground as [Petitioner] folded the knife and put it away. With a smile on his face, [Petitioner] then walked up to a group of people and enthusiastically said, "Oh, yeah. That's right."
>
>   On the night of the incident, Misti Ann Ramsay was at a friend's house when [Petitioner] arrived. A news story regarding the stabbing incident was on the television. [Petitioner] responded to the story by stating, "I did it. I got in it with that guy and that was me." [Petitioner] also said that he was attacked by a homeless person and acted in self-defense. When Ramsay returned home that evening, she called the police and stated that [Petitioner] bragged to her about the incident when it came on the news. Additionally, that evening, [Petitioner] called Brown and said, "I guess I got him pretty good" or "I got him."

(Respondent's Lodgment 9 at 2-4.)

//

//

### III. PROCEDURAL BACKGROUND

In San Diego Superior Court case number SCD206206, a jury found Petitioner guilty of one count of first-degree murder [Cal. Pen. Code § 187 (a)]. The jury found true the allegation that Petitioner committed the offense with a deadly weapon [Cal. Pen. Code § 12022 (b) (1)]. The trial court sentenced Petitioner to 26 years to life imprisonment. (Respondent's Lodgment 4 at 1554.)

Petitioner appealed his conviction to the California Court of Appeal. (Respondent's Lodgment 6.) On May 31, 2011, the Court of Appeal affirmed the judgment of the Superior Court, in an unpublished opinion. (See generally Respondent's Lodgment 9.) On June 15, 2011, Petitioner filed a Petition for Review in the California Supreme Court. (Respondent's Lodgment 10.) On September 14, 2011, the California Supreme Court summarily denied the Petition for Review. (Respondent's Lodgment 11.)

On December 10, 2012, Petitioner filed a Petition for Writ of Habeas Corpus in this Court. (Doc. No. 1.) On December 27, 2012, this Court ordered a Response to the Petition. (Doc. No. 5.) On February 14, 2013, Respondent answered the Petition. (Doc. No. 7.)

### IV. SCOPE OF REVIEW

This Petition is governed by Title 28, United States Code, § 2254, as amended by the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA"). Section 2254(a) sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was <u>contrary to</u>, or involved an <u>unreasonable application</u> of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an <u>unreasonable determination</u> of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2245(d)(1)-(2) (emphasis added).

"AEDPA establishes a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" <u>Womack v. Del Papa</u>, 497 F.3d 998, 1001 (9th Cir. 2007) [quoting <u>Woodford v. Viscotti</u>, 537 U.S. 19, 24 (2002)]. To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2). See <u>Williams v. Taylor</u>, 529 U.S. 362, 403 (2000). The Supreme Court has ruled that the "contrary to" clause of § 2254(d)(1) permits a grant of habeas relief "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." <u>Id.</u> at 412-13. The Supreme Court has also interpreted the "unreasonable application" clause of § 2254(d)(1) to allow a grant of "the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. The Supreme Court has

1  clarified that under § 2254(d)(2), even an erroneous or incorrect
2  application of clearly established federal law does not support a
3  habeas grant, unless the state court's application was "objectively
4  unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).
5        When there is no reasoned decision from the state's highest
6  court, the Court "looks through" to the underlying appellate court
7  decision. See Ylst v. Nunnemaker, 501 U.S. 797, 805-06 (1991). If
8  the dispositive state court order does not "furnish a basis for its
9  reasoning," federal habeas courts must conduct an independent review
10 of the record to determine whether the state court's decision is
11 contrary to, or an unreasonable application of, clearly established
12 Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 981-82 (9th
13 Cir. 2000) (overruled on other grounds by Lockyer, 538 U.S. at 75-
14 76). A state court need not cite Supreme Court precedent when
15 resolving a habeas corpus claim. Early v. Packer, 537 U.S. 3, 8
16 (2002). Even absent citations to Supreme Court precedent, habeas
17 relief is not merited if the state court decision neither contra-
18 dicts the reasoning nor the result of Supreme Court rulings. Id.
19        V.   DISCUSSION
20        Petitioner claims that habeas relief is proper based on one
21 ground. Petitioner asserts that his due process rights were
22 violated based on insufficient evidence to support his conviction
23 for first-degree murder under California Penal Code § 187(a).
24 (Petition at 9.) Specifically, Petitioner claims that there was no
25 evidence of premeditation or deliberation to suggest "the crime was
26 anything other than an unconsidered or rash impulse arising from a
27 sudden argument and unplanned physical confrontation." (Petition at
28 19.)

In the California Court of Appeal, Petitioner challenged the sufficiency of the evidence used to convict him. (Respondent's Lodgment 8.) The appellate court denied Petitioner's appeal. (Respondent's Lodgment 9.) He then filed a Petition for Review in the California Supreme Court which denied his Petition without comment. (Respondent's Lodgment 11.) The last reasoned state decision which addressed the merits of the claim is the California Court of Appeal's opinion affirming Petitioner's conviction for first-degree murder. (Respondent's Lodgment 9.) It is to that decision this Court must direct its analysis. Ylst, 501 U.S. at 805-06.

The clearly established federal law regarding sufficiency of the evidence claims in the criminal context is set forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). In Jackson, the Court held that the Fourteenth Amendment's Due Process Clause is violated, and an applicant is entitled to habeas corpus relief, "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. In making this determination, habeas courts must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming the jury resolved all conflicts in a manner that supports the verdict. Id. at 319. Once a state court fact finder has found a defendant guilty, federal habeas courts must consider the evidence "in the light most favorable to the prosecution." Id. Federal habeas courts must also analyze Jackson claims "with explicit reference to

the substantive elements of the criminal offense as defined by state law." Id. at 324 n. 16.

The Ninth Circuit has stated, "(a)fter AEDPA, we apply the standards of Jackson with an additional layer of deference." Juan H. v. Allen, 408 F.3d 1262, 1275 (9th Cir. 2005). In Allen, the Ninth Circuit first reviewed the standard of review applied by the state appellate court to a sufficiency of the evidence claim, and found that, although the state court did not cite to the relevant federal case law, "such a citation is not required 'so long as neither the reasoning nor the result of the state-court decision contradicts' Supreme Court precedent." Id. at 1274 n. 12, quoting Early, 537 U.S. at 8. Viewing the evidence "in the light most favorable to the prosecution," as this Court must, it is clear that sufficient evidence was adduced at trial to support Petitioner's conviction for committing first-degree murder under California law. Jackson, 443 U.S. at 319.

The appellate court denied Petitioner's claim that there was insufficient evidence to support his conviction, stating:

> Here, there is sufficient evidence that [Petitioner] murdered Fortner in a premeditated and deliberate fashion. In fact, there is ample evidence from which the jury could have reasonably inferred that [Petitioner] wanted to kill Fortner. The evidence shows that [Petitioner] taunted Fortner, who was intoxicated and unsteady on his feet. During the altercation, Fortner tried to fight back, but never actually struck [Petitioner]. Fortner was trying to disengage himself by putting his hands up and backing away, but despite these attempts, [Petitioner] said to Fortner, "I'm going to get you in self-defense."
>
> Further, the jury could have reasonably inferred that Fortner was an unresisting victim. When Fortner tried to stand up after being punched by [Petitioner], [Petitioner] pulled out a knife, flipped it open, and held it by his side. Before Fortner could fully stand up, [Petitioner] cupped Fortner's head in his hand and, with a single quick blow, stabbed him in the neck with

```
             such force that it completely severed his spinal cord
             and vertebral artery and cut into his cervical verte-
             brae.  (Citations omitted.) [Petitioner] walked away
             and said "I told ya I'd get you. Self-defense. Self-
             defense. Everybody saw that. Self-defense."
             Based on the evidence, a rational trier of fact could
             have concluded that [Petitioner] rapidly and coldly
             formed the idea to kill Fortner during the course of
             events at the beach that evening, and that he therefore
             acted after a period of reflection, rather than on an
             unconsidered or rash impulse.
```

(Respondent's Lodgment 9 at 5-7.)

This Court agrees with the Court of Appeal's findings. Under California law, "[m]urder is the unlawful killing of a human being ... with malice aforethought." Cal. Penal Code § 187(a). Further, "[a]ll murder which is perpetrated by means of ... willful, deliberate, and premeditated killing ... is murder of the first degree." Cal. Penal Code § 189. "Premeditated" means "considered beforehand," and "deliberate" means "formed or arrived at as a result of careful thought and weighing of considerations for and against the proposed course of action." People v. Mayfield, 14 Cal.4th 668, 767 (1997). "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly ..." Id. Here, sufficient evidence was adduced at trial to prove to a rational jury that Petitioner was guilty beyond a reasonable doubt for committing the offense. Jackson, 443 U.S. at 324.

Petitioner argues that there was no evidence of planning or motive for his attack. (Petition at 17.) In addition, Petitioner argues that Fortner started the altercation by throwing the first punch. (Petition at 16.) The evidence does not support either of his contentions. Multiple witnesses observed the altercation

between Petitioner and Fortner. (Respondent's Lodgment 4 at 230-40, 256-70, 285-316, 337-79, and 400-33.) Petitioner was observed approaching Fortner and taunting him as he sat on the seawall with headphones on. (Respondent's Lodgment 4 at 290-97.) Many of the witnesses testified that Petitioner was the aggressor and had the upper-hand throughout the altercation. (Respondent's Lodgment 4 at 234-35, 290-97, 342, 344, and 406-07.) Fortner was observed backing away with his hands up in self-defense and told Petitioner to stop. (Respondent's Lodgment 4 at 235-36, 297, 307, 360, and 405-06.) Instead of retreating, Petitioner removed a knife from his pocket, opened it, and held it at his side for a few seconds. (Respondent's Lodgment 4 at 307-10, 365, 407 and 409-10.) Petitioner did not show Fortner the knife before issuing the lethal blow to his neck. (Respondent's Lodgment 4 at 365 and 419.) Rather, Petitioner told Fortner that he was acting in self-defense, then struck Fortner with enough force to sever Fortner's spinal cord and vertebral artery. (Respondent's Lodgment 4 at 310.) The evidence presented by the prosecution could lead a rational trier of fact to find that the Petitioner quickly developed a plan to kill Fortner at the beach that day and then deliberately acted on that plan.

In sum, viewing the evidence in the light most favorable to the prosecution, the Court finds that a rational trier of fact could have found sufficient evidence that Petitioner committed first-degree murder in violation of California Penal Code § 187(a). Thus, the Court concludes that the appellate court's denial of this claim was not contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts. Therefore, this Court RECOMMENDS that Petitioner's

claim for habeas relief in this regard is DENIED.

## VI. CONCLUSION AND RECOMMENDATION

After a review of the record in this matter, the undersigned Magistrate Judge RECOMMENDS that the Petitioner for Writ of Habeas Corpus be DENIED with prejudice.

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636 (b)(1).

**IT IS ORDERED** that no later than June 7, 2013, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than June 21, 2013. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Ylst, 951 F.2d at 1156.

DATED: May 3, 2013

Hon. William V. Gallo
U.S. Magistrate Judge